UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Mindy Carpenter, et al.,**

   *Plaintiffs,*

**v.**                 Case No. 3:17-cv-228
                      Judge Thomas M. Rose

**Liberty Insurance Corporation,**

   *Defendant.*

---

**ENTRY AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, ECF 46, AND GRANTING DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF 47.**

---

Pending before the Court is a Motion for Summary Judgment filed by Plaintiffs Mindy and John Carpenter ECF 46, and a Cross Motion for Partial Summary Judgment filed by Defendant Liberty Insurance Corporation. ECF 47. Each party seeks summary judgment as to what damages are authorized under Ohio law for breach of an insurance contract.

**I. Background**

Plaintiffs' claim arises from a July 7, 2016 fire at Plaintiffs' home at 6703 London Road, South Charleston, Ohio 45368. (Comp. ¶ 4.) On the date of the fire, the property was insured by Defendant Liberty Insurance Corporation pursuant to homeowners policy number H37-288-546176-40 ("the Policy"). (Id. at ¶ 2.) Plaintiffs made an insurance claim following the fire, but after an investigation, Liberty denied the claim.

1

Liberty's investigation concluded that the fire was intentionally set. The Ohio State Fire Marshal concluded that there were multiple points of origin and this was an incendiary fire. (Aff. of E. Mitchell, ¶ 4 and State Fire Marshal's Report attached thereto as Ex. 2, LM 001327-LM001352.) Additionally, Liberty hired Chuck Strader of Fire Explosion Consultants to investigate the fire, and after performing a cause and origin investigation, Strader likewise determined that there were multiple points of origin and this was an incendiary fire. (Aff. of E. Mitchell, ¶ 5 and Strader's Report attached thereto as Ex. 3, LM 001909-LM001972).

There was no sign of forced entry at the Carpenters' home. (State Fire Marshal's Report, LM 001327). No one besides the Carpenter family had keys to the Carpenters' home, and John Carpenter told the Ohio State Fire Marshal that he had to unlock the front door when he arrived the morning of July 7, 2016 in order to open the front door. (State Fire Marshal's Report, LM 001329).

Liberty's investigation also revealed that Plaintiffs' home had sustained water damage and heavy mold growth prior to the July 2016 fire. (Aff. of E. Mitchell at ¶ 7). The insureds explained that a sump pump failure in January 2016—six months prior to the fire—allowed the basement to flood, causing water damage and mold. (Aff. of E. Mitchell at ¶ 7; See portion of transcript from Plaintiffs' Examination Under Oath, Exhibit 4 at LM 0003881 ).

Initial public records and credit reports run on the Carpenters revealed that John Carpenter had two state tax liens released in 2014 and in 2016 had three outstanding tax liens against him from 2013, 2014 and 2016 (for $579, $1,219 and $250, respectively); that John Carpenter had an automobile loan opened in November 2013 showing three late payments; and that Mindy Carpenter had six accounts in collections. (Aff. of E. Mitchell, ¶ 8.) In the Spring of

2

2016 John Carpenter had left his job to begin a new lawn care business, while Mindy Carpenter did not work outside the home. (Aff. of E. Mitchell, ¶ 9 and Transcripts from Plaintiffs' Examination Under Oath at LM 000318-19.) \

Finally, during the investigation of the loss, aside from Plaintiffs, Liberty did not identify anyone with a motive to set the fire. (Aff. of E. Mitchell at ¶ 11.) John Carpenter told Liberty he did not know of anyone else who would have reason to set fire to his home. (Aff. of E. Mitchell at ¶ 12.) Having completed its investigation, Liberty denied Plaintiffs' claim on the grounds that the fire was intentionally caused by or at the direction of the insured. (See April 24, 2017 Denial Letter, attached as Ex. 5 to the Affidavit of E. Mitchell).

The Declarations page of the Policy sets the following Policy limits:

Coverage Information

Standard Policy with HomeProtector Plus

| Section I Coverages | LIMITS |
|---|---|
| A. Dwelling with Expanded Replacement Cost | $141,000 |
| B. Other Structures on Insured Location | $100,000 |
| C. Personal Property with Replacement Cost | $130,000 |
| D. Loss of Use of Insured Location | Actual Loss Sustained |

(Policy, LM000002.) These amounts are increased by an Inflation Protection Endorsement. (Policy, LM000041.)

The Policy also includes some additional coverages under Section I—Property Coverages for Debris Removal; Trees, Shrubs and Other Plants; and Fire Department Service Charge. (Policy, LM 000009). The Policy, under Section I—Conditions, specifically states that Liberty will not be liable in the event of a loss for more than the applicable limit of liability:

3

> **1. Insurable Interest and Limit of Liability.**
> Even if more than one person has an insurable interest in the
> property covered, we will not be liable in any one loss:
> a.        To the "insured" for more than the amount of the
> "insured's" interest at the time of loss; or
> b.        For more than the applicable limit of liability.

(Policy, LM000014.)

Plaintiffs filed an action in the Clark County Court of Common Pleas, asserting claims for breach of contract, bad faith and "severe emotional distress/inconvenience/punitive damages." ECF 3.   On July 7, 2017, the action was removed to this Court. ECF 1.

On October 26, 2018, Plaintiffs filed a motion for summary judgment. ECF 46.   This was met with a Response and Cross-Motion for Partial Summary Judgment, ECF 47, by Defendants, who seek summary judgment only as to liability.   Plaintiffs' Motion for Summary Judgment asks the Court to recognize that their breach of contract claim might be entitled to an award in excess of coverage limits; while Defendants seek a ruling the coverage limits cap the award to which Plaintiffs might be entitled on their breach of contract claim and that they are not entitled to attorney fees.

## II.     Standard

A moving party is entitled to summary judgment if the pleadings, the discovery and the disclosure materials on file, and any affidavits "show [ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial where the record "taken as a whole could not lead a rational trier of fact to find for the non–moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   A court must ultimately decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one–sided

that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–**5**2 (1986). In doing so, the evidence is construed and all reasonable inferences are drawn in favor of the nonmoving party. *Hawkins v. Anheuser–Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008).

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250 (quoting Fed. R. Civ. P. 56(e)).

5

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

In ruling on a motion for summary judgment, "[a] district court is not...obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the Court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

Finally, in reviewing an Ohio claim, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the State.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001) (quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th

Cir. 1998)). Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994).

## III. Analysis

Plaintiffs assert that their breach of contract claim might be entitled to an award in excess of coverage limits for emotional damages and attorney fees; while Defendants claim that coverage limits cap the award to which Plaintiffs might be entitled on their breach of contract claim.

Generally, the measure of damages for breach of contract is the sum of the actual and incidental or consequential losses arising from the breach less any costs that the injured party avoided by not having to perform. *Top Notch Excavating, LLC v. Karen* S. *Peterman, et al.*, 2012-Ohio-5266 (Ohio App. 2012)(citing *F. Ent. v. Kentucky Fried Chicken Corp.,* 47 Ohio St. 2d 154, 161, 351 N.E.2d 121 (1976)), and *D'Andrea v. Sturges,* 10th Dist. No. 89AP-1336, 1990 WL 72611 (May 31, 1990), and Restatement of the Law 2d, Contracts (1981) 112, Measure of Damages in General, Section 347. An insurance policy is a contract and must be interpreted by utilizing "the familiar rules of construction and interpretation applicable to contracts generally." *Whitt Mach., Inc. v. Essex Ins. Co.*, 377 Fed. App'x 492, 496 (6th Cir. 2010), citing *Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1348 (Ohio 1982) and *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 597 N.E.2d 1096 (Ohio 1992).

An insurance contract "is to be given a reasonable construction in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *Whitt*, 377 Fed. App'x at 496, citing *Andersen v. Highland House Co.*, 757

7

N.E.2d 329, 332 (Ohio 2001); see also *Hybud*, 597 N.E.2d at 1102 ("[T]he most critical rule is that which stops this court from rewriting the contract when the intent of the parties is evident, i.e., if the language of the policy's provisions is clear and unambiguous, this court may not 'resort to construction of that language.'").

"[A] court cannot create ambiguity in a contract where there is none," and "[a]mbiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." Whitt, 377 Fed. App'x at 496, citing *Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008).

Plaintiffs assert that they are potentially entitled to breach of contract damages over and above the limits of the Policy. The Policy states that Liberty "will not be liable in any one loss * * * [f]or more than the applicable limit of liability." (Policy, LM000014.) When a loss causes damages in excess of a policy limit, an insured may not be entitled to recoup the full amount of the loss. *Whitt*, 377 Fed. App'x at 493, 497-99 (insured suffered a fire loss and incurred debris removal costs in excess of $10,000 but, the insured's policy only provided $10,000 of debris removal coverage). Ohio courts generally agree that a policy limit is the limit an insured can recover under a policy of insurance. See, e.g., *Jones v. Auto Owners Mut. Ins. Co.*, 1999 WL 435103, at *5 (Ohio App. 6 1999); *Clark v. Scarpelli*, 744 N.E.2d 719, 731 (Ohio 2001); *Haas v. Pacific Mut. Life Ins. Co. of California*, 41 N.E.2d 263 (Ohio Ct. App. 1941).

Plaintiffs seek emotional distress damages stemming from Defendant's alleged breach of contract distinct from the emotional damages they seek for Defendant's alleged bad faith in responding to their insurance claim. Plaintiffs are potentially entitled to emotional distress damages and attorney fees if they first prove their bad faith claim. "An insurer fails to exercise

good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, Syllabus 1 (Ohio 1994). "[A]n insurer who acts in bad faith is liable for those compensatory damages flowing from the bad faith conduct of the insurer and caused by the insurer's breach of contract." Id. at 402. And, in such an instance, "[a]ttorney fees may be awarded as an element of compensatory damages where the jury finds that punitive damages are warranted." Id.

In the context of their breach of contract claim, however, Plaintiffs' emotional distress damages argument relies primarily on *Kishmarton v. William Bailey Constr., Inc*., 754 N.E.2d 785 (Ohio 2001). (ECF 46, PageID 314-15.) *Kishmarton* allows damages for emotional distress for certain types of breach of contract claims. Determining whether a type of breach of contract claim may qualify for incidental damages including emotional damages is determined by focusing on whether it is of such a kind that "serious emotional disturbance" was a "particularly likely result*." Kishmarton v. William Bailey Constr., Inc.,* 93 Ohio St.3d 226, 230, 754 N.E.2d 785 (2001). *Kishmarton* allowed emotional distress damages in contract cases involving transactions between vendees and builder-vendors. 754 N.E.2d at 788. The Court was "confident that allowing emotional distress damages in breach-of contract actions involving vendees and builder-vendors will not open the floodgates." *Id.*

Other types of contract breaches have been recognized at being "particularly likely [to] result" in "serious emotional disturbance." See, *Clay v. Shriver Allison Courtley Co*., 2018-Ohio-3371 (Ohio App. 2018) (emotional damages available from breach of contract with a funeral parlor); *Stockdale v. Baba*, 153 Ohio App. 3d 712, 2003-Ohio-4366, 795 N.E.2d 727, ¶

9

105 (Ohio App. 2003) (emotional damages available from breach of settlement agreement based on stalking charges); but *Allen v. Lee*, 43 Ohio App.3d 31, 34, 538 N.E.2d 1073 (Ohio App. 1987) (residential lease lacks special emotional significance to recover emotional damages).

*Kishmarton* has not been applied by an Ohio state court in an insurance claim context. This Court, however, has held that *Kishmarton* does not give rise to potential emotional distress damages on a breach of contract claim arising from the denial of a home health care insurance claim. *Hartman v. Conseco Senior Health Ins. Co*., 2010 WL 1981014, *7 (S.D. Ohio Civil Action No. 3:08-cv-099, May 18, 2010)(Rose, J.). While Plaintiffs in this case are sympathetic, having two special needs children–one can easily imagine that any financial setback, especially one rendering them homeless, would be particularly likely to result in emotional distress for them–Ohio looks not to the particular parties, but to the type of case, considering generic parties. The Court is still not prepared to say that breaches of insurance contracts are particularly likely to result in emotional damages.

Plaintiffs also assert that they are potentially entitled to recover their attorney fees on their breach of contract claim pursuant to *Motorists Mut. Ins. Co. v. Trainor*, 294 N.E.2d 874 (Ohio 1973) and *Allen v. Standard Oil Co*., 443 N.E.2d 497. *Trainer* permits an insured to recover attorney fees, but only when the insured is forced to litigate a declaratory judgment action regarding an insurer's duty to defend the insured against an underlying claim. *Trainor*, 294 N.E.2d at Syllabus Pt. 4, 875. But this potential recovery is limited to situations involving declaratory judgment actions regarding underlying liability claims against the insured. As the Supreme Court of Ohio held:

> The usual rule in Ohio with respect to attorney fees can be found in *Gates v. Toled*o (1897), 57 Ohio St. 105, 48 N.E. 500, denying

>their recovery when the action is for breach of contract. However, an exception to that general rule has developed when an insurer wrong[]fully refuses to defend an action against its insured.

*Trainor*, 294 N.E.2d at 878.

The Sixth Circuit has refused to award attorney fees to an insured simply because the insured had recovered policy proceeds on a breach of contract claim after the insurer had denied the claim. See *B-T Dissolution v. Provident Life and Acc. Ins. Co., Inc*., 192 Fed. App'x 444, 446 (6th Cir. 2006). According to the Sixth Circuit:

>The action in this case presented the issue of whether the insurance company was required under its policy to pay benefits to the insured. The fact that the losing party in the breach of contract action was an insurance company does not change the present state of the law in Ohio. * * * Our mandate under *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), leads to the inevitable decision that, under prevailing Ohio law, the insured is not entitled to recover attorney fees when it is successful in a suit against its insurance company for payments under the terms of the policy, absent a finding of bad faith in the denial of coverage.

Id. at 447.

## V.   Conclusion

Thus, because breach of insurance contract claims have not been recognized by Ohio courts as being particularly likely to result in serious emotional distress, and because this Court does not find them to be so, no emotional distress damages are available to Plaintiffs on their breach of contract claim. Because Ohio does not recognize attorney fees in breach of insurance contract claims, Plaintiffs are limited to policy limits coverage.

Plaintiffs' Motion for Summary Judgment, (ECF 46), is **DENIED**. Defendants' Cross Motion for Partial Summary Judgment,(ECF 47), is **GRANTED**. The Court grants partial summary judgment that Plaintiffs' recovery on their breach of contract claim is restricted to the

limits of the Policy; and that Plaintiffs are not potentially entitled to emotional distress damages or attorney fees on their breach of contract claim. The case remains set for trial as to the question of liability.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, September 20, 2019.

s/Thomas M. Rose

---

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE