# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | | |
|---|---|---|
| **MINDY CARPENTER, ET AL.,** | : | |
| | : | |
| Plaintiffs, | : | Case No. 3:17-cv-00228 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| **LIBERTY INSURANCE CORPORATION,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON REMAINING ISSUES

Now comes Defendant Liberty Insurance Corporation ("Liberty"), by and through counsel, and moves the Court for summary judgment on the remaining issues pursuant to Rule 56 of the Rules of Civil Procedure. As set forth in the parties' recently-filed Stipulations (Doc. 101), and consistent with the Court's Notation Order of September 13, 2021 (Doc. 102), Liberty seeks judgment on all remaining issues, such that no trial will be necessary in this action.

More specifically, Liberty urges the Court to find as a matter of law: (1) Plaintiffs are not entitled to the unpaid balance of their insurance policy's Dwelling Coverage proceeds, because (a) their home was not a "total loss" under Ohio Revised Code §3929.25; and (b) the sale price of their home has no impact on the Dwelling Coverage claim; and (2) Plaintiffs are not entitled to further Additional Living Expense ("ALE") Coverage proceeds, because those proceeds are limited to the 12-month period following the date of the loss, which Liberty has already paid.

This Motion is supported by and incorporates herein by reference the accompanying Memorandum and the Exhibits thereto.

1

Respectfully submitted,

*/s/ William M. Harter*
William M. Harter (0072874)
FROST BROWN TODD LLC
10 W. Broad Street, Suite 2300
Columbus, OH  43215-3484
(614) 464-1211 / (Fax) (614) 464-1737
wharter@fbtlaw.com
*Attorney for Defendant Liberty Insurance Corporation*

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON REMAINING DAMAGES ISSUES**

**I.     Introduction**

This action arises out of a residential fire insurance claim asserted by Plaintiffs against Liberty, their homeowners insurer.  Plaintiffs brought claims for breach of contract and bad faith.

The Court has already entered two summary judgment decisions in this case, both of which are favorable to Liberty.  On September 20, 2019, the Court determined that Plaintiffs' breach of contract damages could not include emotional distress or attorney fees and could not exceed the limit of the insurance policy.  (Doc. 67.)  On April 3, 2020, the Court reaffirmed that decision and held that, as a matter of law, Liberty was entitled to judgment on Plaintiffs' bad faith claim.  (Doc. 88.)  The facts generally giving rise to this action are set forth in both those decisions, and Liberty will therefore not re-assert the same herein.

Since those decisions, Liberty has paid Plaintiffs what it believes Liberty owes them on the fire loss contract claim given information developed during this lawsuit.  Plaintiffs have accepted the amount Liberty paid on the Personal Property Coverage portion of the claim.  But, Plaintiffs believe that Liberty owes additional proceeds under the Dwelling Coverage and ALE Coverage portions of the claim.

At this point, only two issues remain: (1) Are Plaintiffs entitled to more than Liberty has paid them under the Policy's Dwelling Coverage? and (2) Are Plaintiffs entitled to more than Liberty has paid them under the Policy's ALE Coverage?  The parties have stipulated to the facts which they believe proverbially tee up those questions for resolution as a matter of law.  For the reasons discussed herein, Liberty requests that the Court answer both these questions in the negative and enter judgment for Liberty accordingly.

1

## II.     Statement of Facts

### A.     The Stipulations

In connection with the issues still pending in this case, Liberty and Plaintiffs entered into the following Stipulations:

1. Liberty Insurance Corporation ("Liberty") issued homeowners policy number H37-288-546176-40 ("the Policy") to Shawn Carpenter and Mindy Carpenter ("Plaintiffs") to insure property located at 6703 London Road, South Charleston OH 45368-9632 ("the Property").

2. Ohio Revised Code §3929.25 provides:

> A person, company, or association insuring any building or structure against loss or damage by fire or lightning shall have such building or structure examined by his or its agent, and a full description thereof made, and its insurable value fixed, by such agent. In the absence of any change increasing the risk without the consent of the insurers, and in the absence of intentional fraud on the part of the insured, ***in the case of total loss*** the whole amount mentioned in the policy or renewal, upon which the insurer received a premium, shall be paid. However, if the policy of insurance requires actual repair or replacement of the building or structure to be completed in order for the policyholder to be paid the cost of such repair or replacement, without deduction for depreciation or obsolescence, up to the limits of the policy, then the amount to be paid shall be as prescribed by the policy.
>
> The cellar and foundation walls shall not be considered a part of such building or structure in settling losses, despite any contrary provisions in the application or policy.

(Emphasis added.)

3. Plaintiffs believe the Property was a "total loss" within the meaning of Ohio R.C. §3929.25 as a result of a fire which is the subject of this suit ("the Fire").

4. Liberty does not believe the Property was a "total loss" within the meaning of Ohio R.C. §3929.25 as a result of the Fire.

5. If the Property was a "total loss" within the meaning of Ohio R.C. §3929.25 as a result of the Fire, Liberty owes Plaintiffs $83,714.17 in Dwelling coverage, as this is the unpaid balance of the Dwelling coverage limit under the Policy.

6. Plaintiffs also separately believe that, because the Policy allows for "Actual Cash Value" ("ACV") recovery for losses, their sale of the Property for $258,000 following Liberty's acceptance of coverage for the Fire entitles them to $83,714.17, the unpaid balance of the Dwelling coverage limit under the Policy.

7. If Plaintiffs' home was not a "total loss" within the meaning of Ohio R.C. §3929.25 as a result of the Fire, and if Plaintiffs' sale of the Property for $258,000 following the Fire does not entitle them to a limits payment under the ACV provisions of the Policy, Liberty owes Plaintiffs nothing more than the Dwelling coverage that Liberty has already paid.

8. The Policy provides coverage for Additional Living Expenses ("ALE Coverage") as a result of a covered loss, and Liberty has paid Plaintiffs ALE Coverage for the 12 months immediately following the Fire.

9. Liberty believes the Policy limits ALE Coverage to, at most, 12 months immediately following the date of loss.

10. Plaintiffs believe the Policy has no dollar limit and no temporal limit on ALE Coverage.

11. If Liberty is correct that the Policy limits ALE Coverage to, at most, 12 months immediately following the date of loss, Liberty owes Plaintiffs nothing more for ALE Coverage than Liberty has already paid.

12. If Plaintiffs are correct that the Policy does not have a dollar limit or a temporal limit for ALE Coverage, then Liberty owes Plaintiffs $25,993.03 in additional ALE Coverage.

13.     Plaintiffs agree that, except as related to claims and/or damages for which the Court granted summary judgment in Liberty's favor, and as subject of Plaintiffs' pending claims for breach of insurance contract, Plaintiffs are seeking no damages from Liberty other than (a) the above-described balance of Dwelling coverage due to the Property being a "total loss" within the meaning of Ohio R.C. §3929.25 and/or Plaintiffs being entitled to that balance under the ACV provisions of the Policy; and (b) the above-described ALE Coverage damages for more than 12 months from the date of loss.

14.     Plaintiffs and Liberty agree that two dispositive questions of law remain in dispute regarding the above claims: (a) Are Plaintiffs entitled to the balance of Dwelling coverage because the Property a "total loss" within the meaning of Ohio R.C. §3929.25 as a result of the Fire and/or under the ACV provisions of the Policy because they sold their home for $258,000? and (b) Does the Policy limit ALE Coverage to, at most, 12 months immediately following the date of loss?

15.     During the Spring and Summer of 2021, Plaintiffs provided a series of photographs and expense documents demonstrating repairs they made to the Property following the Fire and demonstrating expenses incurred more than 12 months from the date of the Fire. These photographs and expense documents were provided as supplemental discovery responses from Plaintiffs.

(Doc. 101.)

      **B.**      **The Pertinent Policy Provisions**

            **1.**      **Dwelling Coverage**

The Policy sets forth the Dwelling Coverage provided in pertinent part as follows:

> **COVERAGE A - Dwelling**
> We cover:
> 1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and
>
> 2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises."
>
> This coverage does not apply to land, including land on which the dwelling is located.

(Exhibit 1, Policy, LM 000007.)[1]

Under the Policy's Homeprotector Plus Endorsement, a Dwelling Coverage claim is paid in pertinent part as follows:

> 3. Loss Settlement. Covered property losses are settled as follows:
>    a. The applicable limit of liability for Buildings under Coverage A or B is the replacement cost, after application of deductible and without deduction for depreciation, subject to the following:
>       (1) We will pay the cost of repair or replacement, but not exceeding:
>          (a) The replacement cost of that part of the building damaged using like construction on the same premises and intended for the same occupancy and use;
>          (b) With respect to Coverage A, an amount not exceeding 20% greater than the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;
>          (c) With respect to Coverage B, the limit of liability stated in the declaration, as modified by the Inflation Protection Provision of the policy;
>          (d) The amount actually and necessarily spent to repair or replace the damage.
>       (3) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of a.(1) above.
>
>       However, if the cost to repair or replace the damage is both:
>          (a) Less than 5% of the amount of insurance in this policy on the building; and
>          (b) Less than $2500;
>
>       We will settle the loss according to the provisions of a.(1) above whether or not actual repair or replacement is complete.

---

[1] The Policy was previously filed with the Court at Doc. 72-7. For ease of reference, however, the Policy is also attached hereto as Exhibit 1.

5

(Ex. 1, Policy, LM 000024.)

Nothing in the Policy suggests that the amount due on a claim is in any way related to the subsequent price an insured is able to secure on post-repair sale of the home. (Ex. 1, generally.)

### 2. ALE Coverage

The Policy's base form provides ALE Coverage in pertinent part as follows:

> **COVERAGE D - Loss Of Use**
> The limit of liability for Coverage D is the total limit for all the coverages that follow.
> 1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following. However, if the "residence premises" is not your principal place of residence, we will not provide the option under paragraph b. below.
>    a. **Additional Living Expense,** meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living;

(Ex. 1, Policy, LM 000009.)

Because the Policy's base form is an HO 00 03 form, however (see Ex. 1, Policy, LM 000006), that language is replaced in the Ohio Endorsement as follows:

> For forms HO 00 04 and HO 00 06, item 1. Is deleted and replaced by the following:
> 1. If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.
>
> Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

(Ex. A, Policy, LM 000031-32.)

This language is then further modified by the Homeprotector Plus Endorsement, which

6

provides:

> **C. INCREASED LIMIT - COVERAGE D**
>
> We will pay the amount of loss covered by Coverage D which is actually sustained by you during the 12 consecutive months following the date of loss, subject to the periods of time under paragraphs 1, 2 and 3 of Coverage D - Loss of Use.

(Ex. 1, Policy, LM 000024.)

### III. Law and Argument

#### A. Standard for Motion for Summary Judgment

Summary judgment is required "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Civ.R. 56(a). A motion for summary judgment must be granted if the nonmoving party who has the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element that is essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment may be denied only if there are genuine issues of material fact that must be resolved by a trier of fact. A "genuine" issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" issue of material fact does not exist simply because there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

#### B. Standard for Insurance Policy Interpretation

An insurance policy is a contract and must be interpreted by utilizing "the familiar rules of construction and interpretation applicable to contracts generally." *Whitt Mach., Inc. v. Essex Ins. Co.*, 377 Fed.Appx. 492, 496 (6th Cir. 2010), citing *Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1348 (Ohio 1982) and *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 597 N.E.2d 1096 (Ohio 1992).

7

An insurance contract "is to be given a reasonable construction in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *Whitt*, 377 Fed. Appx. at 496, citing *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332 (Ohio 2001); see also *Hybud*, 597 N.E.2d at 1102 ("[T]he most critical rule is that which stops this court from rewriting the contract when the intent of the parties is evident, i.e., if the language of the policy's provisions is clear and unambiguous, this court may not 'resort to construction of that language.'").

"[A] court cannot create ambiguity in a contract where there is none," and "[a]mbiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Whitt*, 377 Fed. Appx. at 496, citing *Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008).

### C. Plaintiffs are not entitled to additional Dwelling Coverage proceeds.

The parties have stipulated, "If Plaintiffs' home was not a 'total loss' within the meaning of Ohio R.C. §3929.25 as a result of the Fire, and if Plaintiffs' sale of the Property for $258,000 following the Fire does not entitle them to a limits payment under the ACV provisions of the Policy, Liberty owes Plaintiffs nothing more than the Dwelling coverage that Liberty has already paid." (Doc. 1, Stip. 7.) Because Plaintiffs cannot satisfy either of these criteria, Liberty is entitled to judgment as a matter of law on these issues.

#### 1. Plaintiffs' home was not a "total loss" under Ohio R.C. §3929.25.

Ohio Revised Code §3929.25 provides:

> A person, company, or association insuring any building or structure against loss or damage by fire or lightning shall have such building or structure examined by his or its agent, and a full description thereof made, and its insurable value fixed, by such agent. In the absence of any change increasing the risk without the consent of the insurers, and in the absence of intentional fraud on the part of the insured, ***in the case of total loss*** the whole amount mentioned in the policy or renewal, upon which the insurer received a premium, shall

8

> be paid. However, if the policy of insurance requires actual repair or replacement of the building or structure to be completed in order for the policyholder to be paid the cost of such repair or replacement, without deduction for depreciation or obsolescence, up to the limits of the policy, then the amount to be paid shall be as prescribed by the policy.
>
> The cellar and foundation walls shall not be considered a part of such building or structure in settling losses, despite any contrary provisions in the application or policy.

Ohio R.C. §3929.25 (emphasis added).

This "valued policy" statute exists to avoid value disputes regarding "total loss" fire claims. *Myers v. Cincinnati Ins. Co.*, 561 n.E.2d 1060, 1062 (Ohio App. 1989), citing *Milwaukee Mechanic's Ins. Co. v. Russell*, 62 N.E. 338 (Ohio 1901). In this case, however, as a matter of law, Plaintiffs' home was not a "total loss" after the Fire, and Plaintiffs are therefore not statutorily entitled to the Dwelling Coverage limit.

### a. The Standard for a "Total Loss"

A building is only a statutory "total loss" if it "has lost its identity and specific character as a building, even though some parts of it still remain standing." *Paterson-Leitch Co. v. Ins. Co. of N. Am.*, 366 F.Supp. 749, 757 (N.D. Ohio 1973), citing *Penn. Fire Ins. Co. v. Drackett*, 57 N.E. 962 (Ohio 1900). The *Penn. Fire* case further informs that a "total loss" occurs "[w]here a building is so far destroyed by fire as to lose its identity and specific character as a building, and the parts that remain cannot be utilized to advantage in its reconstruction[.]" *Penn. Fire Ins. Co.*, 57 N.E. at 962, Syll. ¶2.

In other words, according to *Penn. Fire*, a "total loss" includes both the "absolute extinction" of a building as well as a building which is nothing more than "a mass of ruins, parts of which may remain standing, but of no value in repairing or rebuilding the structure, though something might be realized for the material by removing it[.]" *Id*. at 963. A "total loss" also

9

occurs where damages exist to such an extent that an insured is unable to secure a building permit to repair the same. *Hamilton Cty. Mut. Fire Ins. Co. v. Rosenbaum*, 171 N.E. 345 (Ohio App. 1929).

### b. Plaintiffs repaired their home, and it never lost the character of a building.

Plaintiffs' home was unquestionably repairable after the fire. In fact, the parties have already stipulated that Plaintiffs in fact repaired the home themselves. (Doc. 101, Stip. 15.)

Further, while the home certainly sustained internal fire and smoke damage, photographs from shortly after the Fire and contained within the Fire Marshal's Report confirm that the home never lost its "identity and specific character as a building." (Exhibit 2, Fire Marshal's Report, LM 001338, 1343 and 1344.)[2] The home was certainly never a "mass of ruins" or the like.



---

[2] The Fire Marshal's Report was previously filed with the Court at Doc. 72-8. For ease of reference, however, the Report is also attached hereto as Exhibit 2.

10









As a matter of law, Plaintiffs' home was not a "total loss" under R.C. §3929.25, and that statute does not entitle Plaintiffs to recover additional Dwelling Coverage proceeds.

### 2. The post-Fire repair sale price of Plaintiffs' home has no bearing on the amount of Dwelling Coverage proceeds to which they are entitled.

Plaintiffs also argue that they are entitled to additional Dwelling Coverage proceeds because, post-repairs, they sold their home for $258,000. (Doc. 101, Stip. 6.) This argument is wholly unsupported by the Policy, which makes no reference whatsoever to the subsequent sales price of the Plaintiffs' property. The amount to which insureds are entitled for Dwelling Coverage after a fire is governed by (a) the terms of the insureds' policy; and (b) if applicable, Ohio R.C. §3929.25. In this case, given that neither mentions Plaintiffs' post-loss sale price of the home, that price has no bearing on the amount Plaintiffs are entitled to recover.

For the reasons herein, Plaintiffs are not entitled to any additional Dwelling Coverage proceeds under the Policy.

### D. Plaintiffs are not entitled to additional ALE Coverage proceeds.

Plaintiffs argue that Liberty also owes more ALE Coverage proceeds than Liberty has paid. (Doc. 101, Stip. 10.) But, the parties have stipulated that Liberty paid the amount of ALE Coverage owed for the period of 12 months immediately following the Fire. (Doc. 101, Stip. 8.)

The Policy provides in pertinent part that Liberty only owes ALE Coverage "which is actually sustained by you during the 12 consecutive months following the date of loss[.]" (Ex. 1, Policy, LM 000024.) Again, the parties have stipulated that Liberty has already paid this amount. As a matter of law, Liberty owes nothing further in ALE Coverage.

## IV. Conclusion

For the reasons set forth herein, Liberty is entitled to judgment in its favor as a matter of law on the remaining damages issues. Liberty urges the Court to grant this Motion and resolve all remaining issues accordingly.

          Respectfully submitted,

          */s/ William M. Harter*
          William M. Harter (0072874)
          FROST BROWN TODD LLC
          10 W. Broad Street, Suite 2300
          Columbus, OH  43215-3484
          (614) 464-1211 / (Fax) (614) 464-1737
          wharter@fbtlaw.com
          *Attorney for Defendant Liberty Insurance Corporation*

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing has been served on all parties via their counsel of record through the Court's ECF system this 8th day of October, 2021.  For any counsel not registered to receive filings electronically, a copy of the foregoing will be sent via regular U.S. Mail, postage pre-paid.

          */s/ William M. Harter*
          William M. Harter (0072874)
          FROST BROWN TODD LLC

0000T69.0650092  4819-4380-6205v2